# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GREGORY J. HARTNETT, et al.,** : | |
| Plaintiffs : | |
| : | No. 1:17-cv-100 |
| v. : | |
| : | (Judge Kane) |
| **PENNSYLVANIA STATE EDUCATION** : | |
| **ASSOCIATION, et al.,** : | |
| Defendants : | |

## MEMORANDUM

On January 18, 2017, Plaintiffs Gregory J. Hartnett, Elizabeth M. Galaska, Robert G. Brough, Jr., and John M. Cress, Pennsylvania public school teachers, (collectively, "Plaintiffs") initiated this action by filing a complaint (Doc. No. 1)[1] against their respective school district employers Homer-Center School District, Twin Valley School District, and Ellwood City School District (the "School District Defendants"), as well as the superintendents of those school districts, and the following collective bargaining entities: Homer-Center Education Association ("H-CEA"), Twin Valley Education Association ("TVEA"), Ellwood City Education Association ("ECEA"), and the Pennsylvania State Education Association ("PSEA") (collectively, the "Union Defendants"), alleging violations of their First and Fourteenth Amendment rights as a result of the compulsory collection of union fees (or so-called "fair share" fees), from nonmember public school teachers pursuant to the Pennsylvania statutory framework permitting the collection of those fees.[2] Plaintiffs' amended complaint seeks

---

[1] Plaintiffs subsequently filed an amended complaint (Doc. No. 23), which is the operative pleading in this matter.

[2] The following Pennsylvania statutes govern the relationship between public school teachers, public school districts, and collective bargaining units: 71 P.S. § 575, 43 P.S. §§ 1101.101 et seq., and 24 P.S. §§ 1-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.

declaratory and injunctive relief, nominal damages, and an award of attorneys' fees. (Doc. No. 23 ¶ 80.) Currently pending before the Court are the parties' cross-motions: the Union Defendants'[3] Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. No. 64), and Plaintiffs' Motion for Summary Judgment (Doc. No. 63). For the reasons that follow, the Union Defendants' Motion to Dismiss will be granted, and Plaintiffs' Motion for Summary Judgment will be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As noted above, through this litigation, Plaintiffs challenge the constitutionality of Pennsylvania's statutory framework governing the compulsory collection of "fair share" union fees from nonmember public school teachers on its face and as applied, maintaining that such fees are a violation of their First Amendment rights. (Doc. No. 23.) The Union Defendants' initial defense to this litigation centered on the United States Supreme Court's decision in Abood v. Detroit Board of Education, 431 U.S. 209 (1977), which upheld the constitutionality of "fair share" statutory provisions under a public sector labor contract. In recent years, several lawsuits, including the instant case, were filed around the country for the purpose of obtaining Supreme Court review in an effort to overrule Abood and to declare "fair share" fees in the public sector unconstitutional. During the pendency of this litigation, the United States Supreme Court granted certiorari in Janus v. AFSCME Council 31, 138 S. Ct. 2448 (2018), which presented the question of whether Abood should be overruled and public sector "fair share" fee arrangements

---

[3] Plaintiffs voluntarily dismissed their claims against the individual superintendents on March 21, 2017 (Doc. No. 24), and the Court dismissed all claims against the School District Defendants with prejudice by Order dated June 26, 2017 (Doc. No. 51), leaving only the Union Defendants remaining as defendants in the case.

declared unconstitutional. Specifically, Janus involved an Illinois public employee's challenge to compulsory "fair share" fees charged to non-union members pursuant to Illinois law as violative of his First Amendment rights. Recognizing the significance of the Supreme Court's eventual ruling in Janus to this litigation – that it was "nearly certain to impact and control the disposition of this matter" – the parties filed a joint motion seeking a stay of these proceedings until the resolution of Janus. (Doc. No. 55.) The Court granted the motion, staying these proceedings until the Supreme Court's final disposition of Janus. (Doc. No. 56.)

On June 27, 2018, the Supreme Court issued its decision in Janus, overruling Abood by a vote of 5-4 and holding that "[s]tates and public-sector unions may no longer extract agency fees from nonconsenting employees." See Janus, 138 S. Ct. at 2459. Shortly thereafter, the Court held a status telephone conference with the parties regarding the impact of Janus on the disposition of this case. (Doc. No. 59.) At that time, the Union Defendants expressed their position that, because of their stated compliance with Janus by ceasing all collection of "fair share" fees from nonmembers (including all four Plaintiffs) and returning any such fees collected after the date of the Supreme Court's decision, this litigation has been rendered moot. Plaintiffs, on the other hand, maintained that they continue to seek declaratory and injunctive relief from this Court in the form of a finding that Pennsylvania's "fair share" statutory scheme is unconstitutional in light of Janus. Accordingly, the Court issued a scheduling Order setting dates for the cross-filing and briefing of the parties' respective dispositive motions regarding the appropriate resolution of this litigation. (Doc. No. 60.)

Thereafter, on September 14, 2018, Plaintiffs filed a Motion for Summary Judgment seeking a declaration from this Court that the relevant provisions of Pennsylvania law, as well as

the actual "fair share" fee provisions in the respective collective bargaining agreements ("CBAs") applicable to Plaintiffs, are an unconstitutional violation of Plaintiffs' First and Fourteenth Amendment rights and, therefore, null and void, as well as injunctive relief requiring the Union Defendants to remove the "fair share" fee provisions in the CBAs governing Plaintiffs' respective bargaining units, and prohibiting the inclusion of any such provisions in any subsequent CBAs.[4] (Doc. No. 63 at 4.) Plaintiffs also filed a Statement of Facts supporting their Motion for Summary Judgment (Doc. No. 65), and a brief in support of their motion (Doc. No. 66). The Union Defendants subsequently filed a brief in opposition to Plaintiffs' motion (Doc. No. 69), as well as an Answer to Statement of Facts (Doc. No. 68). Plaintiffs filed their brief in reply, rendering the motion ripe for disposition.[5]

At the same time, the Union Defendants filed their Motion to Dismiss for Lack of Jurisdiction, or in the alternative, for Summary Judgment. (Doc. No. 64.) In their motion, the Union Defendants argue that in light of the Janus decision and the measures taken by the Union Defendants to comply with that decision, Plaintiffs can no longer obtain meaningful relief from this Court, and Plaintiffs' claims are moot and subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Id. ¶ 6.) The Union Defendants filed a Statement of Material Facts in Support of their Motion (Doc. No. 64-1), as well as a brief in support (Doc. No. 67). Plaintiffs filed a brief in opposition to the Union Defendants' motion

---

[4] In their Motion for Summary Judgment, Plaintiffs disclaim their initial request for nominal damages because they acknowledge that the Union Defendants have "paid each plaintiff $100.00 in nominal damages." (Doc. No. 63 at 4.)

[5] Subsequent to the completion of briefing on Plaintiffs' motion, Plaintiffs have filed seven separate Notices of Supplemental Authority Relevant to Pending Dispositive Motions pursuant to Local Rule 7.36. (Doc. Nos. 79, 81, 85-89.)

(Doc. No. 71), as well as an Answer to Statement of Facts (Doc. No. 70). The Union Defendants subsequently filed their reply brief, rendering the motion ripe for disposition.[6]

## II. RELEVANT LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." See U.S. Const., art. III, § 2. "A case becomes moot – and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)). The parties must maintain a personal stake in the resolution of the dispute throughout the litigation. See Chafin v. Chafin, 568 U.S. 165, 172 (2013). "Therefore, 'if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot.'" Gayle v. Warden Monmouth Cty. Corr. Inst., 838 F.3d 297, 303 (quoting Rosetti v. Shalala, 12 F.3d 1216, 1224 (3d Cir. 1993)). Stated differently, "[t]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." See Rendell v. Rumsfeld, 484 F.3d 236, 240 (3d Cir. 2007) (citation and quotation omitted).

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite

---

[6] The Union Defendants have also filed numerous Notices of Supplemental Authority pursuant to Local Rule 7.36 subsequent to the briefing of their motion. (Doc. Nos. 74-78, 80, 82-84, 90.)

v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). This is so because "if it did, the courts would be compelled to leave '[t]he defendant. . . free to return to his old ways.'" Id. at 289 & n.10 (citations omitted). The Supreme Court has announced a "stringent" standard for "determining whether a case has been mooted by the defendant's voluntary conduct." See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc., 528 U.S. 167, 189 (2000). Specifically, the Supreme Court has stated that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (internal quotation omitted).

Factual challenges to a court's subject matter jurisdiction under Rule 12(b)(1) on the grounds of mootness can be raised at any time in the litigation. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891-92 (3d Cir 1977) (stating that the "12(b)(1) factual evaluation may occur at any stage of the proceedings"). In conducting this inquiry, a court may consider evidence outside the pleadings. See Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (noting that a factual challenge permits a court "to weigh the evidence and satisfy itself as to the existence of its power to hear the case") (quoting Mortensen, 549 F.2d at 891). Typically the plaintiff bears the burden to persuade the court that it has subject matter jurisdiction. See Mortensen, 549 F.2d at 891 (stating that "the plaintiff will have the burden of persuasion that jurisdiction does in fact exist"); Gould, 220 F.3d at 178 (same). However, the party alleging that a claim has become moot due to a change in a defendant's conduct bears the burden to demonstrate mootness. See Friends of the Earth, 528 U.S. at 189 ("The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.") (citation omitted).

## III. DISCUSSION

### A. Arguments of the Parties

As noted above, the Union Defendants maintain that the actions taken by them with regard to the Plaintiffs in light of the Supreme Court's decision in Janus have rendered Plaintiffs' requests for declaratory and injunctive relief moot. (Doc. No. 67 at 6, 12-20.)[7] The Union Defendants maintain that given the "broad, categorical nature" of the ruling in Janus, they recognized immediately that Pennsylvania's statutory scheme authorizing "fair share" fees had "become unenforceable; and they immediately took steps to stop collection of such fees." (Id. at 8.) In connection with their motion and Statement of Material Facts, the Union Defendants submitted several Declarations attesting to actions taken by them regarding Plaintiffs in the wake of the Supreme Court's decision in Janus. Those actions, as described in their Statement of Material Facts and the relevant Declarations, are as follows.

On the day of the Janus decision, Defendant PSEA[8] communicated with every school employer with which a PSEA union affiliate had a "fair share" fee clause in their CBA, notifying them of the decision and asking them to "immediately cease payroll deductions of fair share fees from feepayers in bargaining units represented by PSEA local associations." (Doc. No. 64-1 ¶ 8.) Further, PSEA established procedures to refund any "fair share" fees deducted from nonmembers, with interest, that were attributable to the period after June 27, 2018, the date of

---

[7] The Union Defendants correctly note that the justiciability of Plaintiffs' claims must be demonstrated "separately for each form of relief sought." See Friends of the Earth, 528 U.S. at 185.

[8] Defendant PSEA is a "statewide employee organization" under 71 P.S. § 575(a), and is affiliated with Defendants H-CEA, TVEA, and EAEA. (Doc. No. 64-1 ¶ 2.)

the decision in Janus.  (Id. ¶ 9.)

In addition, on July 2, 2018, Defendant PSEA sent letters to all "fair share" feepayers explaining the import of the Janus decision and informing them that it had contacted employer school districts and asked them to immediately stop payroll deduction of "fair share" fees from nonmembers.  (Id. ¶ 10.)  Defendant PSEA sent such a letter to each of the Plaintiffs, and refunded any portion of "fair share" fees deducted from their payroll accounts prior to June 27, 2018, but attributable to the period after June 27.  (Id. ¶ 11.)  Defendant PSEA also delivered $100 cashier's checks to each Plaintiff to compensate them for their claims of nominal damages in connection with this litigation.  (Id. ¶ 12.)

The Union Defendants have submitted Declarations from each of the superintendents in the three school districts employing the four Plaintiffs, declaring that Janus made Pennsylvania's public sector "fair share" fee arrangements unconstitutional and unenforceable and stating that each school district ceased the deduction of "fair share" fees as of June 27, 2018, and will not resume the deduction of such fees in the future.  (Id. ¶¶ 13, 15-16.)  In addition, the Union Defendants submitted a September 10, 2018 Memorandum of Understanding between the Homer-Center School District and Defendant H-CEA removing the "fair share" fee provision from their CBA.  (Id. ¶ 14.)

The Union Defendants also submitted Declarations from the respective Presidents of Defendants TVEA, H-CEA, and EAEA, all representing that the "fair share" fee provisions in their CBAs, in effect until July 31, 2020, August 14, 2020, and June 30, 2020, respectively, are not valid or enforceable, and pursuant to instruction from Defendant PSEA, those Defendants will not seek to collect further "fair share" fees from nonmembers through the respective school

8

districts. (Doc. No. 64-1, ¶ 17, Exs. 7-9.)

The Union Defendants argue that in light of these facts, both Plaintiffs' claim for injunctive relief (directing the removal of and prohibition on "fair share" fee provisions in their CBAs) and declaratory relief (seeking a declaration that Pennsylvania's statutory provisions under which "fair share" union fees from nonmembers are authorized and deducted are unconstitutional and unenforceable) have been rendered moot. (Doc. No. 67 at 14-15.) In support of their position, the Union Defendants point to a post-Janus decision in Danielson v. Inslee, 345 F. Supp. 3d 1336 (W.D. Wash. Aug. 16, 2018). In Danielson, the court granted the State Defendants' motion to dismiss, concluding that the State Defendants' efforts to stop collection of "fair share fees (or "agency" fees) in the wake of the Supreme Court's decision in Janus rendered the Plaintiffs' claims for declaratory and injunctive relief against them moot. See id. at 1340. Defendants further note that they can collect "fair share" union fees from nonmembers only with the assistance of school district employers in deducting those fees from nonmember paychecks and remitting them to the relevant Union Defendants. (Id. at 17.) Defendants argue that given that: (1) such deductions are now unlawful under Janus; (2) governmental agencies are presumed to follow the law; and (3) the Union Defendants have submitted evidence demonstrating that Plaintiffs' employers have followed the law, ceasing deduction of "fair share" fees from nonmembers and attesting to their intent to fully comply with Janus, there is no reasonable expectation that "fair share" fees will be deducted from Plaintiffs' paychecks in the future. (Id.) Accordingly, in sum, the Union Defendants argue that "[i]t has become 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur,'" and therefore, there is no meaningful relief that can be provided by this Court,

9

mooting Plaintiffs' requests for declaratory and injunctive relief. (Id. at 17-18) (quoting Friends of the Earth, 528 U.S. at 189 (internal quotation omitted)).

In response to the Union Defendants' claim that Plaintiffs' requests for declaratory and injunctive relief are now moot, Plaintiffs assert several arguments. As an initial matter, Plaintiffs maintain that the National Education Association ("NEA"), of which Defendant PSEA is a subordinate affiliate, and Defendant PSEA have previously demonstrated a willingness to play "fast and loose with Supreme Court precedent." (Doc. No. 71 at 10.) Second, Plaintiffs argue that this case is not moot because no court has applied Janus to Pennsylvania law, analogizing the instant case (and the obligations of a district court in the aftermath of a relevant Supreme Court decision) to two other high-profile Supreme Court decisions – Citizens United v. Federal Election Commission, 558 U.S. 310 (2010) and Obergefell v. Hodges, 135 S. Ct. 2584 (2015). Plaintiffs argue that lower courts were required to apply those decisions to relevant state statutes, even over objections that the cases had been rendered moot. (Doc. No. 71 at 12-13.)

Specifically, with regard to the effect of Obergefell, Plaintiffs point to an Eighth Circuit Court of Appeals decision in Waters v. Ricketts, 798 F.3d 682 (8th Cir. 2015), in which the State of Nebraska maintained that a challenge to its statute banning same-sex marriage was moot because Obergefell addressed the constitutionality of Michigan's, Kentucky's, Ohio's, and Texas' bans on gay marriage in such a way that it was clear that Nebraska could not enforce its gay marriage ban. (Doc. No. 71 at 13-14.) The Eighth Circuit found that Nebraska's "assurances of compliance with Obergefell do not moot the case" under the standard articulated in Friends of the Earth, instead finding that those assurances from the state may impact the necessity of continued injunctive relief. See Waters, 798 F.3d at 685-86 (citation omitted).

10

Plaintiffs analogize the relief they seek from this Court – a declaration that 71 P.S. § 575(a)-(i) (Pennsylvania's Public Employee Fair Share Fee Law) and the "fair share" fee provisions in Plaintiffs' respective CBAs are invalid, and the issuance of injunctive relief expunging "fair share" fee provisions from the relevant CBAs – to that granted by this court after the Supreme Court decision in Citizens United in General Majority PAC v. Aichele, No. 1:14-cv-332, 2014 WL 3955079, at *1 (M.D. Pa. Aug. 13, 2014). (Doc. No. 71 at 16-17.) Plaintiffs maintain that after the Supreme Court held in Citizens United that a federal ban on corporate or union-funded independent political speech violated the First Amendment, a number of lower courts struck down similar state bans pursuant to that decision. (Id. at 12-13, 16-17.) Plaintiffs argue that in Aichele, despite the fact that the government defendant conceded the unconstitutionality of Pennsylvania's statute, the court still entered a permanent injunction against the enforcement of Pennsylvania's statute. (Id. at 17-18.)

Finally, Plaintiffs maintain that this case is not moot because the Union Defendants' "voluntary change" in policy fails to meet their burden to demonstrate that there is no reasonable expectation that the wrongful behavior will recur. (Id. at 18-21.) Plaintiffs note that the Third Circuit has described the burden to demonstrate mootness as a "formidable" one, and argue that it is not met by the Union Defendants' statement of intent not to resume illegal activity, pointing to what it describes as the potential for PSEA to "press [its] authority under state law like it has done before," and the fact that only one of the three local union affiliate Defendants has executed a Memorandum of Understanding removing the "fair share" fee provision from the relevant CBA, which Plaintiffs argue "raises questions as to why those two local defendants are resistant to the expungement of the forced fee provision." (Id. at 19-20.) In addition, Plaintiffs maintain

11

that to the extent that the policy articulated by the PSEA as to the cessation of any attempts to collect "fair share" union fees from nonmembers in the wake of Janus provides assurance against the recurrence of the illegal behavior, such assurance does not moot the need for a declaration as to the constitutionality of Pennsylvania law, but instead impacts the scope of potential injunctive relief, again citing Waters and Aichele regarding the aftermath of the Supreme Court's decisions in Obergefell and Citizens United. (Id. at 21-22.)

In their brief in reply, the Union Defendants maintain that the operative point as to mootness – overlooked by Plaintiffs in pressing for a ruling of Janus's impact on Pennsylvania law – is that "because of a significant change in circumstances prompted by Janus, Plaintiffs no longer face the kind of imminent threat of harm necessary to support standing for claims of injunctive and declaratory relief." (Doc. No. 72 at 6.) The Union Defendants maintain that the ruling of Janus – that "States and public sector unions may no longer extract agency fees from nonconsenting employees" – "leaves no room for uncertainty." (Id.) Accordingly, the Union Defendants argue that the undisputed facts regarding their actions in the wake of Janus attest to the fact that they recognize their responsibility to abide by its holding. (Id. at 6-7.) Along these lines, the Union Defendants point out that on October 17, 2018, Defendant EAEA executed a Memorandum of Understanding with the Ellwood Area School District recognizing that Janus rendered the fair share fee provision of their CBA unenforceable, confirming that the school district will no longer deduct "fair share" union fees from non-member paychecks, and removing the unenforceable provision from their CBA. (Doc. No. 72, Addendum at 16.) The Union Defendants also point to guidance issued by the Commonwealth of Pennsylvania's Attorney General and Department of Labor and Industry to all public sector employers confirming that

they must stop collecting "fair share" fees from non-union employees[9] as additional support for the fact that there is no reasonable chance that the deduction of "fair share" fees from the Plaintiffs' paychecks will recur. (Doc. No. 72 at 7-8.)

### B. Plaintiffs' Claims for Declaratory and Injunctive Relief are Moot

Upon careful consideration of the arguments of the parties, the materials submitted in connection with the Union Defendants' motion, and the relevant authorities, the Court is persuaded that Plaintiffs' remaining claims for declaratory and injunctive relief are moot. The change in circumstances that has occurred here as to these Plaintiffs in the wake of the Janus decision, specifically consisting of: (1) the PSEA's immediate steps to cease collection of "fair share" union fees from all non-members of its local union affiliates (including the four Plaintiffs) and to refund any "fair share" fees collected after the date of the Janus decision; (2) the declarations of the superintendents of each school district employing Plaintiffs stating that those districts have ceased deduction of "fair share" fees and will not resume such deductions in the future; (3) the declarations from the respective Presidents of Defendants H-CEA, TVEA, and EAEA representing that the "fair share" fee provisions in their CBAs are not valid or enforceable, and that they will not seek to collect further "fair share" fees; and (4) the Memoranda of Understanding entered into between the Homer-Center School District and the H-CEA and Ellwood Area School District and the EAEA, formally removing the unenforceable

---

[9] See Pa. Att'y Gen., Guidance on the Rights and Responsibilities of Public Sector Employees and Employers Following the U.S. Supreme Court's Janus Decision (Aug. 8, 2018), https://www.attorneygeneral.gov/wp-content/uploads/2018/08/2018-08-03-AG-Shapiro-Janus-Advisory-FAQ.pdf; Pa. Dep't Labor & Indus., Guidance Regarding the June 2018 Janus Supreme Court Decision (Sept. 6, 2018), https://www.dli.pa.gov/Businesses/Labor-Management-Relations/Pages/JANUS-Advisory.aspx.

13

provisions from their CBAs,[10] demonstrate that it has become "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." See Friends of the Earth, 528 U.S. at 189. In light of the changed circumstances, the Court finds that Plaintiffs face no realistic possibility that they will be subject to the unlawful collection of "fair share" fees, and, therefore, Plaintiffs' claims for declaratory and injunctive relief are moot.

In addition, the Court finds Plaintiffs' analogies to Obergefell and Citizens United to be inapposite. As to Obergefell, the Union Defendants distinguish the statutes at issue in the post-Obergefell cases as self-enforcing legislative mandates banning the recognition of same-sex marriage or the extension of marital privileges to same-sex couples, while pointing out that the Pennsylvania statute challenged by Plaintiffs here is not self-enforcing, but instead permits the deduction of "fair share" fees in the event that the union would "provide the public employer with the name of the nonmember who is obligated to pay a fair-share fee," as well as the amount of the fee. (Doc. No. 72 at 12) (citing 71 P.S. § 575(c)). Accordingly, the Union Defendants maintain that as they have confirmed that no such information is being provided or will be provided by the unions to the Plaintiffs' school district employers, the "fair share" fee statute can have no impact on Plaintiffs. (Id.) As to the post-Citizens United cases, the Union Defendants note that in virtually all of the cases, a live controversy existed because the government defendants did not concede that the challenged state laws were unconstitutional. (Id. at 12-13.)

---

[10] Although Defendant TVEA has not executed a Memorandum of Understanding with the Twin Valley School District explicitly removing the "fair share" fee provision from its CBA, as Defendants H-CEA and EAEA have done, the President of the TVEA has explicitly declared the "fair share" fee provision of its CBA invalid and unenforceable. (See Doc. No. 64-1, Ex. 6 ¶ 5.) Moreover, the Twin Valley School District superintendent has declared the authority permitting the deduction of "fair share" fees unenforceable. (See Doc. No. 64-1, Ex. 4 ¶¶ 2-5.)

The fact that the court in Aichele found that a live dispute existed over the scope of the remedy for a violation where the state government conceded the unconstitutionality of the statute does not change the Court's conclusion here as to the mootness of Plaintiffs' claims, especially where the question of mootness was not presented to the court in Aichele.

The Court addresses one final issue raised by Plaintiffs. In their supplemental filings submitted after the completion of briefing on the pending motions, Plaintiffs have identified several post-Janus CBAs entered into between certain Pennsylvania school districts and their local union affiliates containing "fair share" fee provisions, in an apparent effort to substantiate their claims that the Union Defendants here may resume unlawful deduction of "fair share" fees from the Plaintiffs in this case. (Doc. Nos. 79, 81, 85-89.) However, as surprising as those submissions may be, in light of the fact that none of them involves any of the three school district employers of Plaintiffs, or their respective local union affiliates who are defendants in this litigation, they are irrelevant to the issue as to whether these Plaintiffs' claims have been rendered moot. Absent some reason to doubt that the representations of the school district officials are genuine, the Court will not question the validity of those representations based on language in CBAs applicable to other school districts and other local union affiliates who are not parties to this litigation. See, e.g., Flanigan's Enter., Inc. v. City of Sandy Springs, Ga., 868 F.3d 1248, 1256 (11th Cir. 2017) (holding that "[b]ecause of the deference with which [a court] view[s] voluntary changes in government action, a plaintiff disputing a finding of mootness must present more than '[m]ere speculation that the [government body] may return to its previous ways'") (citation omitted), cert. denied, 138 S. Ct. 1326 (2018); Citizens for Responsibility & Ethics in Wash. v. SEC, 858 F. Supp. 2d 51, 63 (D.D.C. 2012) (stating that "speculations about

15

potential recurrence might be sufficient" to avoid a finding of mootness "were Defendants private litigants," but "such conjecture is insufficient" where the defendant is a governmental entity).

For all of the foregoing reasons, this Court joins the multiple district courts that have addressed similar arguments in the wake of Janus and have held that plaintiffs' prospective claims for declaratory and injunctive relief were rendered moot under similar circumstances. See Akers v. Md. State Educ. Ass'n, No. 1:18-cv-1797-RDB, 2019 WL 1745980, at *5 (D. Md. Apr. 18, 2019) (finding plaintiff claims for declaratory and injunctive relief moot in light of the actions of union defendants to stop collection of agency fees in the wake of Janus); Lee v. Ohio Educ. Ass'n, No. 1:18-cv-1420, 2019 WL 1323622, at *1 (N.D. Ohio Mar. 25, 2019) (same); Carey v. Inslee, No. 3:18-cv-05208, 2019 WL 1115259, at *1 (W.D. Wash. Mar. 11, 2019) (holding request for injunctive and declaratory relief moot under similar circumstances); Cook v. Brown, 364 F. Supp. 3d 1184, 1188-90 (D. Or. Feb. 28, 2019) (same); Yohn v. Cal. Teachers Ass'n, No. 8:17-cv-00202, 2018 WL 5264076 at *4 (C.D. Cal. Sept. 28, 2018) (same); Danielson v. Inslee, 345 F. Supp. 3d at 1339-40 (finding state defendant's demonstration of compliance with Janus sufficient to moot claims).

## IV. CONCLUSION

Based on the foregoing, the Court will grant the Union Defendants' Motion to Dismiss for lack of subject matter jurisdiction and direct that this case be closed. Plaintiffs' Motion for Summary Judgment will be denied. An appropriate Order follows.